**FARM CONSTRUCTION SERVICES, INC., Plaintiff, Appellant,**

v.

**Stephen D. FUDGE and Gail L. Fudge, Defendants, Appellees.**

No. 87–1032.

United States Court of Appeals, First Circuit.

Submitted June 9, 1987.

Decided Oct. 15, 1987.

Peter F. Davis and Davis, Davis, Davis & Levin on brief for plaintiff, appellant.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

The dominant issue presented in this appeal is whether the district court abused its discretion in dismissing the complaint of appellant, Farm Construction Services, Inc., for appellant's failure to comply with discovery orders pursuant to Fed.R.Civ.P. 37(a)(2). Appellant also argues that, even if sanctions were appropriate, the object of those sanctions properly should be appellant's counsel only, and not appellant. Finally, appellant contends that, because the case was improperly removed to federal court under 28 U.S.C. § 1441, then the district court inappropriately rendered final judgment in the matter; instead, the court should vacate its judgment and remand the case to state court for resolution. The appellees, Stephen and Gail Fudge, have filed a motion for summary disposition pursuant to Local Rule 27.1. The appellees assert that appellant has presented no substantial question on appeal, thereby warranting affirmance of the district court's judgment. After an independent review of the record, we conclude that the judgment of the district court was correctly rendered and did not constitute an abuse of discretion.

Farm Construction Services, Inc. filed a complaint in the Massachusetts state court against the Fudges for breach of a contract under which Farm Services agreed to assist the Fudges in the construction of a stable and horse-training facility. The Fudges counterclaimed for losses which they allegedly suffered as a result of Farm Construction's failure to perform its duties under the contract in the manner promised. Shortly after filing the counterclaim, the Fudges successfully petitioned for removal to the United States District Court for the District of Massachusetts, claiming complete diversity and an amount in controversy well in excess of $10,000.

As part of the litigation process, the Fudges filed a request for production of documents, numbered 1 through 17, as well as a set of interrogatories to be answered by Farm Construction. Although there is evidence in the record which supports the conclusion that Farm Construction ultimately provided answers to the interrogatories, the record also shows that the documents in paragraphs 1 through 7 of the Fudges' request for production of documents were intentionally withheld by the appellant, Farm Construction.

The highlights of the appellant's recalcitrance with respect to the requested documents are as follows. The appellees' original request for documents on July 17, 1985 was followed by appellant's complete failure to respond and by appellees' subsequent motion to compel production. The court allowed the motion, with the directive that documents be produced by August 15, 1985. Shortly after the court issued its order, the appellant filed a response to the request for production. In the response, appellant objected to the production of the documents described in paragraphs 1 through 9 of the request on the grounds that these documents were not discoverable, were unclearly defined and that production would be unduly burdensome. The documents which are the subject of the controversy consist of various state and federal tax returns, articles of organization and by-laws of appellant corporation, and employment and other contracts with various customers and subcontractors. Concurrently with its response to the request for production, appellant moved for a protective order claiming that the documents were either irrelevant, were requested for purposes of harrassment, or were described too broadly. The appellees opposed the motion for a protective order and moved for sanctions in the form of dismissal of the original complaint. The district court referred the discovery dispute to a magistrate, who on October 11, 1985 denied

appellant's protective order and allowed appellees' motion for sanctions "to the extent that subject documents shall be provided within fifteen days. Failure to comply will result in sanctions."

Approximately one month prior to the magistrate's order, the appellant submitted a letter to the district court requesting that the overall discovery and trial dates be extended by 90 days due to a fire in appellant's office building. On November 4, 1985, having received no documents on the date prescribed by the magistrate, appellees moved to extend the overall discovery deadline for a period of 90 days. The district court granted the motion, extending the overall deadline to February 15, 1986. It is not clear what precise effect, if any, this overall extension was intended to have on the requested documents which had been the object of dispute; however, when the appellees again moved for the sanction of dismissal in January 1986, the district court allowed the motion and entered judgment for the appellees, stating that "plaintiff [appellant] has repeatedly refused to produce documents ordered by the court." Appellant's response to this ultimate motion for sanctions did not assert inability to present the requested documents because of the alleged fire or for any other reason, but instead reiterated the argument that the tax returns, articles of organization, by-laws and contracts requested "in no way whatsoever relate to any issue remaining in this action." Appellant moved for relief from judgment (April, 1986) and for reconsideration (June, 1986), both of which motions were denied by the district court. The persistent assertion in appellant's motions is that all "relevant" documents were produced or made available to opposing counsel. In fact, in the April 1986 affidavit of appellant's counsel accompanying the motion for relief from judgment, counsel admitted that tax returns had not been submitted because he in "good faith" believed they were no longer necessary pursuant to a conversation he had had with appellees' counsel during the early summer of 1985, which was well before the first court order.

■ On appeal, Farm Construction asks us to consider whether it was "just" for the district court to dismiss its complaint because of a failure to produce documents. According to Fed.R.Civ.P. 37(b)(2)(C), just and appropriate sanctions for failure to comply with a discovery order include dismissal of an action. The standard of review for the imposition of such a sanction is whether the district court abused its discretion. *Damiani v. Rhode Island Hospital*, 704 F.2d 12 (1st Cir.1983); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In *Damiani*, this court upheld as within the district court's discretion the latter's dismissal of an action for failure to comply with discovery. 704 F.2d at 15. A court is not necessarily required to attempt less severe sanctions before turning to the sanction of dismissal, *id.*, nor is a court required to provide an adversary hearing before imposing this sanction. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). In *National Hockey League*, the Supreme Court restated its previously established position that Rule 37 does not authorize dismissal for failure to comply with discovery orders " 'when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of the petitioner.' " *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976), *quoting Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958).

■ In the matter before us, there is some evidence of an extenuating circumstance (i.e., the fire in appellant's counsel's office building) which might have established appellant's inability to comply. There is also a possibility, though remote, that appellant interpreted the overall discovery extension to February, 1986 to apply to the document production ordered by the magistrate for October 26, 1985. Even giving appellant the benefit of the doubt on these issues, however, we must nonetheless conclude that the record adequately

supports a judgment of dismissal.[1] Other than requesting an extension of the overall discovery deadline and postponement of the trial date due to the fire in counsel's office, appellant at no time cited the fire damage as rendering him unable to produce the requested documents. Both before and after the time of the fire, appellant's reasons for non-production remained virtually unchanged: appellant's motion for a protective order of July, 1985 categorizes the disputed documents as "wholly unrelated" to the action, while appellant's January 1986 response to defendant's (appellees') motion for sanctions states that the disputed documents "in no way whatsoever relate to any issue remaining in this action." Appellant did not even try to make a case supporting a legitimate inability to produce documents. Furthermore, as late as July 1986, almost nine months after the magistrate's deadline for production, appellant, in its opposition to defendants' motion for entry of final judgment, was still asserting that the documents requested "[do] not involve even remotely any issue" in the case. Thus, even if appellant had mistakenly believed that the discovery extension to February 1986 applied to the October 26, 1985 deadline set by the magistrate, it is apparent that appellant continued to disobey the production order well beyond that outside deadline. Even more culpable is appellant's unilateral decision, supplanting that of the court, that the documents requested were not relevant to the case. Where the court had denied a protective order and had repeatedly ordered production, it is obvious that a decision had been made that the documents were *not* irrelevant or unrelated to the proceedings. In point of fact, the documents, at a minimum, would have been relevant to appellees' position in this case as it pertained to plaintiff/appellant's claimed damages. We can find no abuse of discretion on the part of the district court in dismissing a case where the appellant has intentionally disregarded court orders on repeated occasions and substituted its own judgment for that of the court. Appellant was notified by the magistrate on October 11, 1985 that sanctions in the form of dismissal would be imposed for failure to comply with discovery. It must now face the consequences of withholding the requested documents.

With respect to appellant's claim that sanctions should have been imposed on counsel rather than the client, this argument would require us to ignore established law. In *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court expressly stated,

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390. This Circuit, following *Link*, has turned a "deaf ear" to the plea that "the sins of the attorney should not be visited upon the client." *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 17 (1st Cir.1983). *See also, Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410, 413 (1st Cir.1981); *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Pease v. Peters*, 550 F.2d 698, 701 (1st Cir.1977).

Finally, appellant contends that the district court should never have entered final judgment on this matter because both parties acted upon a mutual mistake of law with respect to the propriety of removal to federal court. We can find no authority which supports appellant's position that such a "mutual mistake of law" warrants vacation of judgment and remand to a state court. The district court correctly noted that the initial removal of this action was improper. Where, as here, an action brought initially in state court involves parties of diverse citizenship and an amount in controversy exceeding $10,000, the defend-

---

1. We note that the district court did not explain the basis for its dismissal beyond the fact that appellant had repeatedly refused to produce documents ordered by the court.

ant may remove the action to federal court only if the defendant is not a citizen of the state in which the action was originally brought. 28 U.S.C. § 1441(b). Since the Fudges were citizens of Massachusetts, and the suit was originally filed in the Massachusetts state court, the removal of the action by the Fudges was technically inappropriate. Despite this fact, the district court was still able to render final judgment. Relevant authority "support[s] a view that jurisdiction will be retained where, as here, although the case was not technically removable under the statute, the court yet had jurisdiction over the subject matter of the controversy, and the parties had fully consented to the federal jurisdiction and acted thereunder." *Handley-Mack Co. v. Godchaux*, 2 F.2d 435, 437 (6th Cir.1924). We agree with the district court's conclusion that appellant's continued prosecution of the case in federal court for approximately one year, and its failure to object to removal until after judgment had been rendered, constitute implicit consent to federal court jurisdiction and waiver of its right to object to removal. *See, Stromberg v. Costello*, 456 F.Supp. 848, 849 (D.Mass.1978). (although removal to federal court was technically improper, where plaintiff proceeded in federal court without objection, he waived his right to seek remand to state courts). Where the removal was improper only for technical reasons, the issue on appeal "is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). Since there was complete diversity among the parties and the amount in controversy exceeded $10,000, federal subject matter jurisdiction existed which allowed the district court to render final judgment on this matter.

*The judgment of the district court is hereby*

*Affirmed.*