**HMG PROPERTY INVESTORS, INC., Plaintiff, Appellee,**

v.

**PARQUE INDUSTRIAL RIO CANAS, INC., Defendant, Appellant.**

Nos. 87–1155, 87–1368.

United States Court of Appeals, First Circuit.

Heard Feb. 3, 1988.

Decided May 17, 1988.

Ronald L. Rosenbaum with whom Woods, Rosenbaum, Luckeroth & Perez Gonzalez, Hato Rey, P.R., was on brief, for defendant, appellant.

Arturo J. Garcia–Sola with whom Jose R. Gonzalez–Irizarry and McConnell Valdes Kelley Sifer Griggs & Ruiz–Suria, Hato Rey, P.R., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

The last lap of this marathon of a case was run when the United States District Court for the District of Puerto Rico entered a default judgment against appellant, Parque Industrial Rio Canas, Inc. (Parque), and thereafter ordered Parque to pay certain sums of money to appellee, HMG Property Investors, Inc. (HMG).[1] Parque offers a myriad of reasons in support of its strident claim that the district court let the race wander well off course. We do not share appellant's view.

## I. BACKGROUND

In July 1972, HMG entered into a $2,600,-000 construction loan agreement with Par-que for the development of an industrial park in Puerto Rico (the Rio Canas property). The loan was secured by a first mortgage on the real estate. It was to be repaid in stipulated monthly installments until July 1974, when a balloon payment would become due. Parque failed to meet the payment terms. In February 1976, with the loan substantially in arrears, Parque carved out thirteen lots from the Rio Canas property and sold them to Compania Aseguradora Interamericana S.A. of Panama (CA). The "proceeds," which went to HMG to reduce the principal owed under the mortgage note, were not in coin of the realm, but consisted of an agreement by the transferee to assume debt and make payments *in futuro*. CA also bound itself to comply with the terms of a mortgage. Some nine months later, Parque entered into a similar transaction with Bambu Realty Corporation (Bambu); two more lots were segregated from the Rio Canas property, released, and sold. The principal amount of the mortgage note was again reduced.

At this point, we pause to recapitulate. Bambu, CA, and Parque were three of a kind: each was deep in debt to HMG, bound by a periodic payment schedule, and obligated under the mortgage documents to "pay all taxes, assessments and similar charges levied and assessed ... against the property...." Shuffling the deck in this fashion, however, did not solve the underlying problem. Before long, each debtor was in arrears, and both CA and Parque had fallen behind in payment of real estate taxes. HMG, as was its option under the mortgages, satisfied several of the tax bills and demanded that the mortgagors reimburse it for such payments. It did so in vain.

In December 1977, HMG invoked the federal district court's diversity jurisdiction, 28

* Of the District of Massachusetts, sitting by designation.

1. The case was originally brought by the trustees of a Massachusetts business trust, Hospital Mortgage Group, which later merged with Hospital Mortgage Group, Inc., a Delaware corporation. The corporation was the surviving entity in the merger. It thereafter abbreviated its name and became HMG Property Investors, Inc. In November 1983, the corporation was substituted as the party plaintiff. For ease in reference, we shall omit reference to the trustees and treat the case as if HMG, in its corporate incarnation, had been the plaintiff-obligee throughout.

U.S.C. § 1332(a), and sued CA. It sought, *inter alia*, to foreclose its mortgage on the thirteen lots. CA joined Parque as a third-party defendant, claiming fraud. Within the framework of the same action, Parque thereafter filed a cross complaint (erroneously styled as a third-party complaint) against HMG, contending that the lender's refusal to continue financing the deal had caused the collapse of the entire Rio Canas project. HMG counterclaimed, seeking damages and the right to foreclose on the remainder of the lots. Among other things, it alleged that Parque had defaulted on both the mortgage loan and the property tax obligation.[2] Parque and HMG each moved for summary judgment, but matters were delayed by a barrage of other motions, filed mainly by appellant. It was not until September 19, 1985 that the ax fell. On that date, the district court rejected most of Parque's motions. *Parque Industrial Rio Canas, Inc. v. HMG Property Investors, Inc.*, Civ. No. 77–1936 (D.P.R. Sept. 19, 1985) (*Parque I*). HMG's motion for summary judgment was also denied because the court perceived an issue of fact as to whether HMG had made a verbal promise to postpone collection of principal and advance additional funds. *Id.*

Trial was set for February 6, 1986. In order to forestall a possible tax sale of the property, the court ordered, *pendente lite,* that Parque pay the outstanding taxes or post bond to cover the arrearage and the next six months' tax payments. If the bond were posted, then HMG could pay the taxes with the assurance that its security would not be diminished or lost if it ultimately prevailed in the litigation.[3] In the order which it entered immediately following issuance of *Parque I,* the district court left no room to doubt that Parque's failure to comply would not be lightly indulged. Because of its clear pertinence to the issues raised on appeal, we quote the admonition verbatim:

> Parque is expressly forewarned that failure to comply with any of the terms and conditions of this Order shall entail the imposition of severe sanctions including the dismissal of its complaint, the striking of its defenses and the entering of judgment in favor of HMG on its foreclosure action.

After this order issued, Parque flooded the court with yet another deluge of motions aimed, one suspects, at delaying the actual posting of the bond. On December 12, 1985 the court rejected the principal reconsideration motion but reduced the required surety amount to reflect new information concerning Parque's success in effectuating an administrative reduction of tax liability. Once again, the district judge warned that failure to comply with the bonding order by December 22 would "result in the imposition of any of the sanctions mentioned" in the original order. The judge also shut off further motion practice. She might well have saved her breath; Parque ignored the moratorium.

---

2. Throughout this period, Parque attempted to stall both CA's third-party complaint and appellee's counterclaim by a sham bankruptcy filing. We need not dwell on this aspect of the matter, except to remark that the tactic—although buying appellant some undeserved time—was ultimately ineffectual. Eventually, the bogus Chapter 11 filing was dismissed.

3. The court reasoned (logically, we think) that, notwithstanding any claim that HMG had agreed to finance the mounting tax bill, at some point the ultimate burden of payment would fall squarely on Parque. Thus, the risk of foreclosure for nonpayment threatened to impair appellee's security. As the court explained:

> The danger in this situation lies in the fact that according to the Puerto Rico Tax Code if the Commonwealth acquires the property and no redemption is exercised during the year after the sale, the Commonwealth will have acquired the property free from *all* mortgages[,] liens, or encumbrances regardless of their priority. *See* P.R.Laws Ann., tit. 13, section 519. Although it could be argued that HMG could halt this collection proceeding by paying the delinquent taxes directly as mortgage creditor and obtaining the preferred legal lien incorporated on its existing mortgage credit pursuant to P.R.Laws Ann. tit. 13, section 479, this does not respond to the reality that as the tax liability increases the guaranty offered by the property decreases to a point that may eventually prove insufficient to cover the debt. And if the property is lost, HMG will have little, if anything, to rely on to recover its ever increasing credit.

> *Parque I, supra,* at 51 (emphasis in original).

On December 18, appellant sought a ninety day extension. According to the district judge, Parque said "it was taking steps to raise money to make a payment plan for the tax debt." *Parque Industrial Rio Canas, Inc. v. HMG Property Investors, Inc.*, Civ. No. 77–1936, slip op. at 3 (D.P.R. Feb. 3, 1986) (*Parque II*). The request was denied the next day. The court-imposed deadline came and went. Appellant spurned the court's order, neither paying the taxes nor posting the indemnity. HMG moved to impose sanctions. Parque objected and again asked reconsideration of the December 12 order; it hawked basically the same grounds which had proven unsuccessful on prior occasions. Appellant's request was denied with predictable dispatch. On February 3, 1986, no bond having been tendered and the taxes remaining unpaid, the district court granted HMG's motion and sanctioned Parque for noncompliance. The court dismissed Parque's cross complaint, struck Parque's remaining defense to HMG's counterclaim, and allowed appellee to move for entry of a default judgment. *Id.* at 4. The judge characterized appellant's course of conduct as evidencing a pattern of "callous disregard for court orders." *Id.* at 3.

On August 25, 1986, a default judgment was entered against Parque. By its terms, appellant was ordered to pay HMG the sums owed under the loan agreement and the unpaid property taxes (in an amount to be certified by the taxing authority) for the current year and the five years next preceding. *See* P.R. Laws Ann. tit. 30, § 2651 (limiting tax liens vis-a-vis acquiring mortgage creditor to amounts owed for current tax year, plus last five tax years). If the judgment was not paid within ten days, the Rio Canas property would be sold at public auction and the net proceeds of sale devoted first to payment of the judgment.[4]

Appellant, in a style reminiscent of its approach below, has scurried from lane to lane in the course of these appeals—there are two, but they are for all practical purposes functionally equivalent, and we shall treat them as one—advancing a gymbag full of contentions. Several of these misstate the record, or the law, or both; others are simply so baseless as not to warrant extended comment; and some are vagabonds, straying far from any point legitimately at issue. We discuss below the more substantive of Parque's protestations, having considered and rejected the others out of hand.

## II. THE BOND ORDER

As we have mentioned, the district court ordered Parque, *pendente lite*, either to (i) bring the payment of property taxes current, or (ii) post bond sufficient to cover the accrued tax liability, plus the anticipated taxes for the next six months. The court felt the order was necessary in order to allow HMG "to avoid the danger of losing the guaranty [for its loan] entirely but with the assurance that should it prevail it may recover said payment from the bonds deposited with the Clerk and not overburden the property with this additional ongoing debt." *Parque I, supra*, at 52. Parque contends that the order was procedurally flawed and represented an abuse of the district court's discretion. We scrutinize its chief contentions.

### A. Fed.R.Civ.P. 64

The district court apparently acted under the aegis of Fed.R.Civ.P. 64, which provides in pertinent part:

At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of

---

4. Following entry of judgment and Parque's nonpayment, the district court ordered a judicial sale. On the eve of the sale, a lienholder, Rico Standard, Inc. (RS), which had foreclosed a junior (fifth position) mortgage executed by Parque as security for a supposed loan, claimed to hold title to the Rio Canas property. (RS initiated a foreclosure action in the Puerto Rico Superior Court, Parque stipulated to judgment, and RS acquired the fee title to the property.) Thereupon, RS filed for bankruptcy, bringing the automatic stay provisions of the Bankruptcy Code to bear to halt HMG's federal court foreclosure sale. We report these developments as they have been narrated to us by appellee (without substantial contradiction by appellant). But because this aspect of the matter is not before us, we express no view on what has transpired.

the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held.... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies....

Fed.R.Civ.P. 64. The parties have not suggested that Puerto Rico is to be regarded as other than a "state" for purposes of the Civil Rules.[5]

Rule 64, by its terms, sets out a quadrat of requirements: the provisional remedy must (1) involve a seizure, (2) be entered for the purpose of "securing satisfaction of the judgment ultimately to be rendered in the action," (3) be permitted under the law of the forum state, and (4) be issued in a manner compatible with state law. Appellant does not raise any question as to the first pair of elements,[6] so we pass directly to the final two. These are so closely allied

that we can and do treat them in a unitary fashion.

In the absence of an applicable federal statute or rule, Fed.R.Civ.P. 64 indicates that we look to the law of Puerto Rico to find an appropriate analog for the bonding order. Appellee nominates two candidates: P.R.Laws Ann. tit. 31, § 3049 [7] and Rule 56.1 of the Puerto Rico Rules of Civil Procedure, P.R.Laws Ann. tit. 32, App. III.[8] Because we believe that Rule 56.1 empowered the district court to act, we focus principally on that state-law source, and do not examine into the applicability of section 3049.

In our view, the order to post the bond fell squarely within the ambit of Rule 56.1 and was both reasonable and adequate for the purpose of securing the judgment which HMG sought in this action. In this regard, it is important to note that the Supreme Court of Puerto Rico has construed its procedural rule expansively:

> 64—even though, as with the escrow order in *Halpert v. Engine Air Service*, 212 F.2d 860, 863 (2d Cir.1954), *cert. dism'd*, 350 U.S. 801, 75 S.Ct. 907, 100 L.Ed. 721 (1955), it "savored of an attachment." *See also Trustees of HMG*, 672 F.2d at 251 (bonding order comprises imposition of provisional remedy "indistinguishable from ... attachment order"). We need not probe the point more deeply. Because neither party has raised the question, we assume—but do not decide—that the bonding order constituted a "seizure" of Parque's property.

7. The statute provides:
   > The creditor may, before fulfilling the conditions, enforce the actions which may be proper for the preservation of his right. The debtor may recover what he may have paid during the same period.
   
   P.R.Laws Ann. tit. 31, § 3049.

8. The text of the rule reads in material part:
   > In every action, before or after entering judgment, and on motion of claimant, the court may issue any provisional order it may deem necessary to secure satisfaction of the judgment. The court may order ... any ... measure it deems necessary, according to the circumstances of the case. In every case in which a provisional remedy is sought, the court shall consider the interests of all the parties and shall adjudicate as substantial justice may require.
   
   P.R.R.Civ.P. 56.1.

5. Appellant vociferously protests that the district court's order constituted a mandatory injunction as opposed to a provisional remedy. That road leads nowhere. In the first place, the asseveration seems foreclosed by our earlier decision in *Trustees of HMG v. Compania Aseguradora Interamericana S.A.*, 672 F.2d 250 (1st Cir. 1982) (per curiam), where an interlocutory appeal was taken from a similar order involving CA. We dismissed that appeal for want of appellate jurisdiction, noting that "[s]uch an order is not an order granting or modifying an injunction within the terms of 28 U.S.C. § 1292(a), since it does not constrain the defendant in any way beyond restricting its use of the bond money during the pendency of the litigation." *Id.* at 251. In the second place, even if we were to regard the September 19 order as an injunction, the district court undoubtedly possesses general power to issue injunctions *pendente lite, see* Fed.R.Civ.P. 65, so we would ultimately be faced yet again with the question of whether the court abused its discretion in issuing *this* injunction. Inasmuch as we answer that question in the negative and approve the adequacy of the "hearing" which took place, *see* text *infra*, characterization of the bond order as tantamount to injunctive relief avails appellant naught.

6. That the order was made to protect the security for HMG's loan—the Rio Canas property—plainly fulfills the requirement that the provisional remedy be directed at securing satisfaction of the anticipated judgment. We think it less clear, however, that the order to post bond was a "seizure" within the meaning of Rule

Rule 56 of the Rules of Civil Procedure confers upon the court sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments. Its only limitation is that the measure be reasonable and adequate to the essential purpose of the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered. This flexibility, so necessary for the administration of justice, is the greatest virtue of Rule 56, virtue which we should promote and preserve instead of mystifying it with technical concepts and requirements....

*F.D. Rich Co. v. Superior Court,* 99 P.R. R. 155, 173 (1970). This emphasis on flexibility, on the fashioning of a pragmatic prophylaxis, nicely characterizes the district court's actions. As the court explained, although HMG could "halt [the tax] collection proceeding by paying the delinquent taxes directly as mortgage creditor ... this did not respond to the reality that as the tax liability increases the guaranty offered by the property decreases to a point that may eventually prove insufficient to cover the debt." *Parque I, supra,* at 51. Since, under the loan documents, the ultimate liability for paying the property taxes rested with Parque, and since Parque was resisting foreclosure, it seems to have been altogether reasonable for the district court to have placed the burden of covering the tax delinquency on appellant. This sort of practical, evenhanded disposition, we think, is what P.R.R.Civ.P. 56 envisions. On this record, the rule would, without serious question, allow entry of such an order. And, there was no abuse of discretion in entering *this* order in these circumstances.[9]

■ Appellant tries to take yet another bite at the bond ruling. It asserts that, whether or not supportable on the record, the record was incomplete and the order procedurally infirm. Parque's contention in this respect reduces to the idea that the order was not made "in the manner provided by" the Puerto Rico Rules because the district court failed to abide by a related provision, P.R.R.Civ.P. 56.2, which stipulates that "[no] provisional remedy shall be granted, ... nor shall any action be taken thereon without notice upon the adverse party and a hearing...." *Cf.* P.R.R.Civ.P. 56.5 (reaffirming notice requirement and giving aggrieved party preferential right to modification hearing if Rule 56 order granted ex parte). In short, appellant insists that Rule 56.2 required the federal district court to hold an *evidentiary* hearing before it ordered the posting of a bond. We disagree.

Appellant cites no authority which interprets Puerto Rico's rule as mandating a full-blown evidentiary hearing, and elementary logic suggests the opposite. *See Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 411 (1st Cir.1985) (under Fed.R.Civ.P. 56, rule's "reference to a 'hearing' does not necessarily imply oral argument; a matter can be 'heard' on the papers"); *Spark v. Catholic University of America,* 510 F.2d 1277, 1280 (D.C.Cir. 1975) (per curiam) (due process does not encompass a right to oral argument on motion). It is clear to us that the notice and hearing requirements contained in Rule 56.2 can be met short of taking evidence in open court. The standards exist to ensure that, before a provisional remedy issues, the parties will have an opportunity to present relevant facts and arguments so the judge can "consider the interests of all the parties and ... adjudicate as substan-

9. Originally, Parque raised no question as to its *ability* to post bond. After the district court entered its order, Parque sought an extension, averring that "it was taking steps to raise money" to pay the taxes. *Parque II, supra,* at 3. It was only thereafter that Parque belatedly claimed it was unable to obtain the bond. Yet even then, it offered not a shred of proof of its empty pockets. Despite asserting in its motion for reconsideration that its only asset was the Rio Canas property itself, appellant had received several large loans—a fact evidenced by the numerous junior liens on the land—and at no time attempted to account for those proceeds. We agree that this chasmal omission served "to belittle Parque's constant lament" of impoverishment. *Parque Industrial Rio Canas, Inc. v. HMG Property Investors, Inc.,* Civ. No. 77–1936, slip op. at 4 n. 1 (D.P.R. August 25, 1986) (*Parque III*).

tial justice may require." P.R.R.Civ.P. 56.-1. To be meaningful, such an opportunity requires notice and a fair chance to marshal supporting facts and theories—nothing more.

Here, the requisite opportunity was afforded in full measure: the case had been pending for years, the district judge was extremely familiar with it, and appellant had made voluminous filings on almost every conceivable point—including a plenitude of filings directed to the property tax situation. Judicial consideration of the tax issue and what it portended took no one by surprise. The record makes manifest that, before entering the bond order, the court was thoroughly informed about all of Parque's arguments. Although Parque disputed the need for the imposition of a provisional remedy at all—arguing, for example, that the property was not in any imminent danger of tax foreclosure—the litigants had fully presented all of their views. The court had before it both parties' motions, briefs, affidavits, exhibits, and a plethora of other materials when it acted. Even at this late date, Parque has pointed to no single, definable aspect of its position which could not have been adequately presented by a written submission.[10]

Further discussion would be supererogatory. Insofar as appears from the record, an evidentiary hearing would have changed nothing. In the circumstances of this case, P.R.R.Civ.P. 56.2 did not necessitate that one be held. *Cf. United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir.1987) (where movant unable to "identif[y] any data needed ... which could not have been furnished by affidavit or in like fashion," refusal to convene evidentiary hearing on Fed.R.Crim.P. 35(b) motion not erroneous); *Socialist Workers Party v. Illinois State Board of Elections*, 566 F.2d 586, 587 (7th Cir.1977) (per curiam) (denial of evidentiary hearing before issuance of permanent injunction harmless where appellants have not "demonstrated that anything that could have arisen in a factual hearing would have altered the result"), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Securities and Exchange Comm'n v. Frank*, 388 F.2d 486, 490 (2d Cir.1968) (evidentiary hearing not compulsory for issuance of preliminary injunction in instances where "[t]he taking of evidence would serve little purpose").

## B. *Inherent Powers*

Appellee has argued, alternatively, that whether or not Fed.R.Civ.P. 64 authorized the district court to employ bonding as a provisional remedy in a case such as this, the bond order was nevertheless a legitimate exercise of the district court's inherent powers. Because the issue is an important one, and because resolution of it furnishes an independently sufficient ground for our holding, we address it.

■ We start with the proposition that "the rules of civil procedure do not completely describe and limit the power of district courts...." *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 (1st Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986). Such courts have inherent powers, rooted in the chancellor's equity powers, "to process litigation to a just and equitable conclusion." *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir.1978). In general, except where a statute or rule holds to the contrary, federal courts enjoy the "inherent power to provide themselves with appropriate instruments required for the performance of their duties." *Ex Parte Peterson*, 253 U.S. 300,

---

**10.** It is not without significance that the key to the bonding order was an *uncontroverted* fact: notwithstanding what verbal representations had or had not been made, appellant would ultimately be responsible to pay the real estate taxes. As the district court observed:

> ... [O]ne thing is clear, whether it is now or in the future, Parque will eventually have to pay these and all future outstanding [property] taxes. The fact that HMG may have agreed to provide additional financing to pay these taxes does not obviate the fact that Parque would have to pay them back once it sold the lots or whatever. It has never indicated that HMG agreed to assume the responsibility of paying all the taxes and penalties ever imposed on the property and that it would condone this debt.

*Parque I, supra*, at 50–51.

312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920). More to the point, that federal courts have the authority to "preserve a fund or property which may be the subject of a final decree is well established." *Usaco Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97–98 (6th Cir.1982), *citing De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134, 89 L.Ed. 1566 (1945). And the judiciary must be free, within reason, to exercise this inherent judicial power in flexible and pragmatic ways. As Justice Cardozo warned, "[w]e must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. North American Co.*, 299 U.S. 248, 256, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

■ In this case, the bond order was plainly desirable in order to ensure a just conclusion and to preserve the res. HMG began the action by seeking the assistance of the court with respect to real estate which would likely become the subject of a final decree should foreclosure be allowed, and its counterclaim reemphasized and expanded this quest. Had the court left the path clear for a tax sale, it would have jeopardized its ability to grant meaningful relief. If the tax sale occurred, the property might well have been lost; on the other hand, if HMG was forced to pay the tax liabilities as they accrued, its security would have been diminished, perhaps to the point of no return. Either way—and especially given the district court's view that HMG had shown a considerable likelihood of success—[11] ordering the bond to be posted was, we think, a measured and appropriate exercise of the court's inherent powers. *See, e.g., Bronson v. La Crosse & Milwaukee R. Co.*, 1 Wall. (68 U.S.) 405, 410, 17 L.Ed. 616 (1863) (in mortgage foreclosure action, district court had inherent power, pending appeal, "to adopt all proper and judicious measures to protect and preserve [the property] from waste or loss"); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir.1976) (federal district courts have "inherent power to require security for costs when warranted by the circumstances of the case"); *cf. De Beers*, 325 U.S. at 220, 65 S.Ct. at 1134 (where court commanded prejudgment sequestration of property *unrelated* to cause of action, order was not an appropriate exercise of inherent power).

## III. THE SANCTION FOR NONCOMPLIANCE

When the September 1985 order was ignored, that is, when appellant failed either to bring the tax payments current or to post bond, the district court dismissed its cross complaint and struck its defense to the counterclaim. Parque protests that these responses were ultracrepidarian. We demur.

Courts cannot function if litigants may, with impunity, disobey lawful orders. It has long been the rule that federal courts possess plenary authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (footnote omitted). Though a federal court may dismiss claims *sua sponte* for proper cause, *id.* at 630–31, 82 S.Ct. at 1388–89, that inherent power has been augmented. Fed.R.Civ.P. 41(b) is an embodiment of the precepts which undergird *Link*. It provides in relevant part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. ...

Fed.R.Civ.P. 41(b).[12]

■ A district judge's choice of remedy under Rule 41(b) is reviewable only for

---

**11.** The district court's denial of appellee's motion for summary judgment hung by only a single issue of disputed fact. On that issue, the court characterized appellant's proffer as "sketchy and full of contradictions." *Parque I, supra*, at 48 (footnote omitted). The district judge termed the bond order as a "provisional remedy [which] was itself an accommodation to Parque's interests in presenting its ... dubious defense. ..." *Parque III, supra*, at 1–2. We find these characterizations to enjoy abundant record support.

**12.** Parque, as a cross complainant, was a "plaintiff" as against HMG within the purview of Rule

abuse of discretion. *Richman v. General Motors Corp.*, 437 F.2d 196, 199 (1st Cir. 1971). *See Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535, 536–37 (1st Cir.1988) (district court's dismissal of action for flouting court orders reviewable only for abuse of discretion) (discussing Fed.R. Civ.P. 37); *Farm Construction Services v. Fudge*, 831 F.2d 18, 20 (1st Cir.1987) (per curiam) (similar); *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410, 413 (1st Cir.1981) (similar), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). In assaying the trial judge's actions, we consider "all pertinent circumstances," *Richman*, 437 F.2d at 199, and balance "the power of the court to prevent undue delays ... [with] the policy of the law favoring the disposition of cases on the merits." *Id.* [13]

■ The record in the case at bar reveals a deplorable pattern of pervasive noncompliance with court orders on Parque's part. Charitably, this amounted to stonewalling —motion after motion, reconsideration request after reconsideration request, endless entreaties for extensions of time atop extensions of time, a variegated assortment of motions to stay, adjourn, or otherwise defer proceedings. A line-by-line perusal of the twenty-six pages of docket entries in the court below shows beyond any realistic doubt that Parque—manifesting greater inventiveness than prudent good judgment—inundated the docket with unnecessary, illfounded, and redundant filings, and did so for years on end. All in all, appellant exhibited what could be termed state-of-the-art lollygagging. Its aim, seemingly, was to use whatever brake was at hand to halt the progress of the suit. To catalog Parque's manifold maneuverings would likely double the size of this already long-spun opinion. Instead, let us simply quote the vivid (and record-supported) description offered by the district court:

[S]pecial allowances [were] granted [to] Parque to develop its defenses, if any. After allowing it more than 200 days of extension upon extension, the opposition [to the summary judgment motion] was finally filed. Nonetheless, Parque found it necessary to file additional motion upon motion, to add mostly repetitious arguments and to introduce other matters outside the scope of the opposition. The Court had to declare a moratorium on filings. After examining each and every one of the multiple arguments scattered in the record that comprised Parque's opposition, issuing a fifty-five page Opinion and Order, and imposing a *pendente lite* bond remedy, Parque again engaged in its tactic of flooding the docket with motions to delay the actual posting of the bond. The second barrage of motions forced the Court to issue another "moratorium" on December 13, 1985 limiting certain filings, *unless prior authorization was obtained.* Needless to say, this did not stop Parque, who in defiance of our order, renewed its repetitive arguments scattered in motions with different titles, some even containing brazen misstatements.

*Parque III, supra,* at 2–3 (emphasis in original). This small slice of the litigation's lingering life conveys, we think, the rather rancid flavor of Parque's offerings. Such rampant obstructionism could not endlessly be tolerated. This case, as we see it, is reminiscent of—but more aggravated than—*Farm Construction Services* where, in the course of upholding a dismissal for failure to comply with a discovery order,

41(b). Likewise, HMG was a "defendant." In any event, labels are relatively unimportant. The provisions of the rule apply equally "to the dismissal of any counterclaim, cross-claim, or third-party claim." Fed.R.Civ.P. 41(c).

**13.** Some of our sister circuits have erected what seems to be a higher threshold for dismissals under Rule 41(b). *See, e.g., Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985) (requiring "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice") (quoting *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980)). *See also Pardee v. Stock,* 712 F.2d 1290, 1292 (8th Cir.1983) (similar). Although we prefer our open-ended balancing test over a more formulary approach, and continue to adhere to it, we note in passing that Parque's conduct in the case at bar was so appalling as to justify dismissal even under the more rigid *Goforth* standard.

we relied on the fact that appellant "intentionally disregarded court orders on repeated occasions and substituted his own judgment for that of the court." 831 F.2d at 21.

The fact that the district court did not initially impose some lesser sanction is of no consequence in these straitened circumstances. In the first place, the court did consider "rul[ing] otherwise," *Parque II, supra*, at 3, but thought the stiffer sanction appropriate in light of what had gone before. The court noted that the contumacy was not "a single isolated mishap," *id.*, but the tip of a rather large iceberg. The court explained:

> Fortunately, in our experience on the bench we have encountered very few times such callous disregard of court orders as has been shown by Parque in this case.... Given the persistent attempts by Parque to delay and deviate the court's attention from solving the central issues in this protracted case and, in view of our efforts to organize and accelerate these proceedings into a judicially cognizable case, Parque's conduct has to be severely sanctioned.

*Id.* The record in the case bears out this assessment in full measure.

■ In the second place, the law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal. *See Farm Construction Services*, 831 F.2d at 20; *Brockton Savings Bank*, 771 F.2d at 12; *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 15–16 (1st Cir.1983); *Asociacion de Empleados v. Rodriguez Morales*, 538 F.2d 915, 917 (1st Cir.1976). The shoe fits in this case.

The judge did not host a surprise party. Appellant cannot credibly claim to have been caught off balance, for it knew in advance that drastic measures were in prospect if the September 19 order was ignored. The docket unmistakably shows as much. Yet these warnings, like the fruitlessly issued moratoria, fell on deaf ears. The case, for the district judge, was no stroll in the Parque. The pattern of obduracy was both striking and shocking. The judge handled it judiciously. She was patient—and more than patient—in dealing with Parque's gamesmanship. She repeatedly warned that failure to post the bond would be the last straw and would leave her no choice but to impose the severest of sanctions. That she finally did so was, in a very real sense, appellant's choosing. We find no abuse of discretion in the district court's dismissal of the cross complaint or in the striking of Parque's defense to HMG's counterclaim.[14]

---

14. Parque cites *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), for the proposition that striking an answer solely to punish noncompliance with a court order violates one's due process right to be heard. This case and *Hovey* are, of course, factually distinguishable. But beyond that, *Hovey* was expressly limited by the decision in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–54, 29 S.Ct. 370, 379–81, 53 L.Ed. 530 (1909), and impliedly limited by the adoption of the Federal Rules and the Court's more modern pronouncements. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. at 632, 82 S.Ct. at 1390 (district court may dismiss under Rule 41(b) without notice or hearing; adequacy of notice and entitlement to hearing "turns, to a considerable extent, on the knowledge which the circumstances show [the affected] party may be taken to have of the consequences of his own conduct"). Finally, the instant case arises in a markedly different procedural posture. Unlike the defendants in *Hovey*, Parque's arguments had been fully heard. It had occupied the court's time months on end. Its position was meticulously considered. There was fair notice: it was only after repeated admonitions that the judge struck the defense. Moreover, appellant's recalcitrance jeopardized the court's ability to grant effective relief and substantially prejudiced appellee.

By not honoring the bond order, it gave the district court every reason to believe that, whether or not HMG extended further interim financing, appellant had no intention, ultimately, of paying the taxes or satisfying the underlying debt. Under such circumstances, the imposition of sanctions was not "mere punishment," *Hammond Packing*, 212 U.S. at 351, 29 S.Ct. at 380, but an effort to rebalance scales which Parque, by its footdragging, had tilted. The order did not contravene due process or conflict with what might remain of *Hovey*. *See Spiller*, at 537–38 ("lack of a hearing does not offend due process where the [party] had ample warn-

## IV. ENTRY OF DEFAULT JUDGMENT WITHOUT A HEARING

■ Parque asserts that the district court erred in denying it a hearing on the amount of the default judgment. To set the stage for consideration of this point, we limn the pertinent text of the applicable civil rule:

Judgment by default may be entered as follows:

... [T]he party entitled to a judgment by default shall apply to the court therefor;

.... If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed.R.Civ.P. 55(b)(2).

It is settled that, if arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind. *See Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944). In this case, appellant contends that the presence of factual disputes rendered the damages incapable of record calculation. Given the hoariness of the controversy and the girth of the record, the argument has some superficial appeal. Yet the district court, intimately familiar with the case from years of travail, repeatedly held the amount of the judgment debt susceptible to arithmetic computation based strictly on the papers. *E.g., Parque III, supra,* at 11 ("we are talking about numerical figures which speak for themselves and which can be easily understood even by an inexperienced investor, which Parque was not").

We review a determination that a hearing was not compulsory under Rule 55(b) only for abuse of discretion. *Sony Corp. v. Elm State Electronics, Inc.,* 800 F.2d 317, 321 (2d Cir.1986); *Farzetta v. Turner & Newell, Ltd.,* 797 F.2d 151, 153 (3d Cir. 1986). *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2693 at 472–74 (1983). Notwithstanding Parque's claims to the contrary, our survey of the papers persuades us that the lower court's finding in this respect was supported by substantial evidence; there was room enough to deduce that the proper judgment amount was calculable from the mortgage and loan agreements, certifications by the taxing authorities, and other documents of record. The district court painstakingly set out the basis for its conclusion, *see Parque III, supra,* at 8–13 & nn. 3–5, and it would serve no useful purpose for us to repastinate that terrain. Rather, we accept substantially the district judge's detailed explanation of her finding and calculations, and rule that the court below acted within the bounds of its discretion in declining to hold an evidentiary hearing before fixing the amount of damages due upon Parque's default.

## V. CONCLUSION

We need go no further. Having attentively reviewed the compendious record in

ing of the consequences of his failure to comply with court orders"); *see also Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 665–66 (1st Cir.1980) (upholding sanction striking pleadings and precluding merits adjudication of defenses where respondents "inexcusably recalcitrant" and plaintiffs suffered prejudice), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F.2d 86, 88–90 (1st Cir.1988) (under particular circumstances of case, district court allowably struck defendants' answer to the complaint as a Rule 37 sanction; court of appeals remarked defendants' "long course of obstruction, delay, and disdain for the [district] court's attempt to preside over a search for the truth"). *But cf. SEC v. Seaboard Corp.,* 666 F.2d 414, 416–17 (9th Cir.1982) (suggesting that striking of an answer may require a preliminary showing tantamount to suppression of proof).

this long-running suit, we discern no reversible error or sign of discretion abused. To the contrary, the district court appears to have acted fairly, perspicaciously, and with laudable circumspection. The judge demonstrated enormous patience in trying circumstances, and kept a firm judicial hand upon the throttle when Parque, by its unremitting recalcitrance, left her little other choice.

The finish line is past. The marathon is over. Appellant's assignments of error, though numerous, are uniformly unavailing. Having transformed inches into miles for well over a decade and a half, Parque should not be allowed to roam the course afresh.

The judgment below, therefore, must be

*Affirmed.*