# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3623
_____

Sentis Group, Inc.; Coral Group, Inc.

*Plaintiffs - Appellants*

v.

Shell Oil Company; Equilon Enterprises, LLC, doing business as Shell Oil
Products US

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2014
Filed: August 14, 2014

_____

Before RILEY, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiffs Sentis Group, Inc., and Coral Group, Inc., sued Defendants Shell Oil Company and Equilon Enterprises, LLC, alleging contract and fraud claims, and violations of Missouri franchise laws as well as the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. The allegations relate to the inception and execution of a gas-station and convenience-store operating agreement involving clusters of

stores in and around Kansas City.  In a prior appeal, we reversed an earlier dismissal sanction and remanded for reconsideration.  On remand, the district court received evidence and made a factual finding that Plaintiffs controlled and failed to preserve certain evidence.  The district court concluded Plaintiffs' failure to preserve evidence caused sufficient prejudice to Defendants to serve as sanctionable spoliation.  Given Plaintiffs' cumulative pattern of conduct in this matter, and given the nature of the missing evidence and its role in Plaintiffs' and Defendants' cases, the district court concluded dismissal with prejudice was the appropriate sanction.  We affirm.

I.      Background

We discussed the facts and history of this case in detail in our prior opinion. See Sentis Group, Inc. v. Shell Oil Co., 559 F.3d 888, 892–98 (8th Cir. 2009).  We review those facts briefly here and address in greater detail discovery and rulings that took place following remand from our prior opinion.

The primary arguments behind Plaintiffs' lawsuit relate to provisions in the operating agreement imposing a duty on Defendants to make payments to Plaintiffs for certain site-specific expenses associated with maintaining retail gas-station facilities.  The expense payment provision states:

> 7(b)  Expenses.  Company shall pay Operator, for each month, an amount deemed sufficient to cover Operator's reasonable, legitimate, and necessary expenses to operate the Motor Fuel Facilities at the Locations in the Cluster in a reasonable and efficient manner.  Expense payment amounts hereunder will be established by Company in its sole discretion for a market and Location type by taking into consideration industry standards or best practice standards, or, where applicable, historical data or specific projected operating circumstances in the market.  Expense payment amounts for each Location are set forth in Exhibit A.  Company will periodically review the expense payment amounts, not less frequently than annually, and may, in its sole discretion and at any time,

increase or decrease the expense payment amount for any Location upon notice to the Operator. If Operator's actual expenses, in the aggregate, for operating the Motor Fuel Facilities at the Locations in the Cluster for any month according to the obligations and standards set forth in this Agreement are less than Company's aggregate payment for expenses under this subarticle, the Operator may retain the overpayment as additional compensation for that month. If Operator's actual expenses, in the aggregate, for operating the Motor Fuel Facilities at the Locations in the Cluster for any month exceed the aggregate amount paid by Company, Operator shall be responsible for the shortfall amount. Notwithstanding the foregoing, if Operator establishes, to Company's satisfaction in its sole discretion, that any expense shortfall amount experienced by Operator, in the aggregate, in operating the Motor Fuel Facilities at the Locations in the Cluster for any year is the result solely of an increase of an Uncontrollable Expense, or of a Controllable Expense due to extraordinary or unforeseeable circumstances, then Company shall reimburse Operator, upon presentation by Operator of an invoice with documentation of such occurrence, the shortfall amount. Operator shall maintain accurate documentation sufficient to prove all expenses. Payments hereunder will be prorated for any period less than a month.

Plaintiffs assert in their complaint that Defendants fraudulently induced Plaintiffs to enter into the operating agreement by presenting false historic expense data. Plaintiffs also assert that Defendants breached the operating agreement and deprived Plaintiffs of the benefit of their bargain by subsequently calculating expense payments using a different method than represented at the time of contract formation. Plaintiffs insist that their own actual operating expenses are irrelevant to their claims. They argue instead that liability can be determined and damages can be measured by looking only at Defendants' historic site expenses. Finally, Plaintiffs allege that Defendants initiated a sale of gas-station locations without honoring Plaintiffs' rights under a state of Missouri franchise statute and the federal Petroleum Marketing Practices Act.

In response, Defendants deny Plaintiffs' allegations and argue that Plaintiffs paid substantial sums to consultants for expenses that were not site-specific and otherwise obfuscated the record of their site-specific expenses in a manner that overstated Plaintiffs' actual expenses. Defendants allege that expense payments to Plaintiffs were adjusted based on Plaintiffs' representations regarding actual performance and expenses. Defendants also assert that Plaintiffs initially treated Plaintiffs' own financial performance and actual expenses as material to their claims. Defendants argue, therefore, that Plaintiffs' financial records are discoverable, vital to the question of damages, and vital to the underlying question of liability (for reasons primarily related to the role that actual expenses play in the contract language as quoted above).

Discovery disputes erupted resulting in multiple discovery conferences with, and orders from, the district court. These disputes culminated in an initial dismissal of the complaint as a sanction against Plaintiffs, as set forth in a June 2007 order. That dismissal relied on the collective effect of several separate perceived abuses, including: (1) Plaintiffs' failure to comply with several discovery orders concerning an expert witness/business consultant named Chris Walls; (2) Plaintiffs' failure to disclose the nature of its relationship with accountant Nick Anton and Plaintiffs' failure to produce financial records held by Anton; (3) purported attempts by Plaintiffs to bribe Anton to hide documents; (4) the production of surreptitiously recorded conversations; and (5) the production of certain emails.

We held that the evidence of Plaintiffs' attempts to bribe Anton to hide documents—reports from counsel containing multiple layers of hearsay concerning unsolicited phone calls from persons claiming to represent Anton—lacked sufficient indicia of reliability to serve as one of the bases for imposing sanctions. Sentis, 559 F.3d at 900–01. We also held that it was not clear to what extent Plaintiffs actually failed to comply with each of the several discovery orders related to Walls. Id. at 902–03. We held the extent of non-compliance with discovery orders was unclear

given differences between the several orders and given Plaintiffs' eventual production of certain documents for the district court's *in camera* review. Id. at 903. Finally, we noted that the other issues appeared to involve arguable close-call interpretations of the record. Id. at 903–04. We emphasized that because the initial dismissal rested on several separate alleged abuses, our conclusions as to some of those issues made remand necessary to assess the continued propriety and scope of sanctions. Id. at 901.

On remand, the parties conducted additional discovery. Anton had by this time disappeared along with his computer, which held much of Plaintiffs' financial information. Defendants deposed several attorneys to gain a picture of the communications about purported bribe attempts involving Anton. Defendants also re-deposed Alan Barazi, Plaintiffs' owner and principal officer.

The district court then held a lengthy evidentiary hearing at which Barazi and others testified. The court expressly found Barazi non-credible, noting that he gave multiple answers in conflict with prior testimony and looked around the courtroom furtively and uncomfortably when doing so. In the context of this credibility determination, the court listed the following as circumstantial evidence supporting Defendants' claim that Plaintiffs had attempted to bribe Anton to conceal evidence: (1) Barazi paid Anton $50,000 in May of 2007 (long after discovery disputes had erupted in this matter and only one month prior to the initial dismissal order); (2) Anton attempted to sell information to Defendants; (3) Barazi claimed he continued to trust Anton even after learning that Anton had tried to sell information to Defendants; and (4) Anton and his computer had disappeared. The district court also emphasized that Plaintiffs did not initially disclose Anton as their accountant, failed to identify him in response to initial discovery requests, and otherwise prevented Defendants from gaining a clear picture of the relationship between Plaintiffs and Anton. The district court noted that Barazi's companies had paid Anton or paid bills for Anton totaling over $155,000 during a time period for which Plaintiffs had previously reported payments of only $46,000.

The court ultimately held, however, that this evidence showed merely that Anton had attempted to solicit a bribe from Defendants, not that Plaintiffs had actually bribed or attempted to bribe Anton. The court concluded this evidence was not enough to sanction Plaintiffs. No party challenges these factual determinations, including the credibility assessment of Barazi, on appeal.

Regarding Walls, the district court concluded that Plaintiffs had willfully violated one underlying discovery order, but that a sanction of dismissal was not appropriate for this violation. Rather, the court sanctioned Plaintiffs by excluding Walls as an expert witness. Plaintiffs do not appeal this portion of the district court's judgment.

The court also held that Barazi and Plaintiffs were responsible for the loss of certain evidence, including store-specific computers, evidence of payments to Anton, and check registers and checks. Further, the court held that Plaintiffs and Barazi had access to and control of Anton and therefore were responsible for the loss of evidence that had been in Anton's possession, including raw data and reports on Anton's computers. The court described this evidence broadly as Plaintiffs' "financial information" and described Barazi's failure to preserve evidence as "ongoing and systemic." The court concluded the loss or failure to preserve this information was intentional, stating:

> The loss of Plaintiffs' financial information, particularly information that passed through Anton's hands or that relates to Anton's compensation, is so widespread that it cannot be mere negligence. There is a discernable pattern here of depriving Defendants of access to this information. First, Plaintiffs did not even identify Anton as their accountant until seven months into the litigation. In fact, they arguably misled Defendants by identifying someone else, Melissa Hurt, as their accountant. Second, the loss of the various financial reports prepared by Anton and kept on his computer appears aimed at preventing Defendants from learning what Plaintiffs' expenses actually were. This deprives Defendants of their

-6-

announced defense that Plaintiffs were, in fact, profitable. Third, the failure to preserve and produce any receipts or invoices related to Anton's compensation or reimbursement thwarts Defendants' efforts to determine how much Anton was paid, or should have been paid, and so impeach Plaintiffs' recordkeeping and general credibility. Obviously, it precluded Defendants from determining whether the $50,000 paid to Anton in May of 2007 was a bribe or an overdue payment for wages. Fourth, and perhaps most damning, is that even after it was revealed that Anton had solicited bribes from at least the Defendants, neither Barazi or Plaintiffs (or Plaintiffs' counsel) ever took any measures to safeguard or copy the financial information on Anton's computer. Consequently, the Court holds Plaintiffs intentionally destroyed financial information by "losing" it under circumstances that evidence a desire to suppress the truth.

Turning to the question of prejudice, the district court concluded that neither the loss of store-specific computers nor the loss of checks or check registers necessarily would cause "irreparable" prejudice to Defendants because—in theory and at some expense—these items likely could be reproduced from other sources (such as Anton's computer or by ordering copies of checks from banks). The court also concluded that Defendants likely and eventually could reconstruct a record of Plaintiffs' payments to Anton.

The court concluded, however, that the loss of Anton's computer and the raw data and reports contained on that computer caused irreparable prejudice because they could not be replaced. The court stated "Anton's computer contained more than just data, it included reports he generated based on his judgment about what data to use and what calculations to make. Unfortunately, no one knows what accounting methods he used, or how he reached his conclusions."

The court determined dismissal was the appropriate sanction because "Plaintiffs' consistently evasive and deceptive conduct . . . culminated with the loss of irreplaceable information on Anton's computer[, and] without this information,

Defendants cannot receive a fair trial." The court also described the role of the financial information in the case, stating the information would be material to the question of damages, the relationship between Plaintiffs and Anton, the compensation to Anton, and the underlying issue of liability.

Plaintiffs appeal.

II.    Discussion

The district court's imposition of the sanction of dismissal was an exercise of the court's inherent authority. Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004). In reviewing the imposition of a sanction, we generally review for an abuse of discretion, but our review "is more focused when the drastic sanction of dismissal or default is imposed." Chrysler Corp. v. Carey, 186 F.3d 1016, 1020 (8th Cir. 1999). That is not to say, however, that the district court lacks discretion or that our review of a dismissal sanction takes a form different than an abuse-of-discretion review. Rather, as evidenced by our prior opinion in this case, the "more focused" nature of our review of a sanction of dismissal demands that we ensure dismissal was in the range of permissible sanctions given the facts presented. See id. ("[I]f a default judg[]ment lies within the spectrum of appropriate sanctions, we will not substitute our own judgment for that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court.").

In urging our court to find an abuse of discretion, Plaintiffs strive to isolate the loss of Anton's computer from all other "evasive and deceptive" conduct identified by the district court. While the district court's ultimate prejudice analysis cited only the loss of Anton's computer as creating an irreparable type of prejudice, we do not read the district court's opinion as isolating or compartmentalizing the loss of the computer from Plaintiffs' other, "ongoing and systemic" failures to preserve and disclose evidence. Rather, we interpret the district court's judgment on remand as holding that

-8-

Plaintiffs carried on a pattern of evasive and objectionable conduct during and after discovery and that, even though many of the misdeeds standing alone might not have individually warranted dismissal, the disappearance of Anton and his computer—following the pattern of evasiveness and obfuscation surrounding Anton—were the straws that broke the camel's back.[1]

Given the history of this matter, as set forth above and as described at length in our prior opinion and in the district court's order on remand, we agree that a sanction was appropriate and that dismissal was a permissible sanction. The record is adequately set forth and supports the district court's judgment regarding the questions of bad faith, Plaintiffs' control of Anton, and the intentional (versus negligent) nature of the ongoing and systematic suppression of evidence. As such, we find no abuse of discretion. Dillon v. Nissan Motor Co., 986 F.2d 263, 268 (8th Cir. 1993) ("[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court."). Plaintiffs' arguments to the contrary are unavailing. We write further to address several specific arguments that Plaintiffs raise on appeal.

Plaintiffs argue: (1) Defendants were granted access to Anton and his computer in a court-ordered, 2006, post-discovery deposition, but Defendants voluntarily terminated the deposition such that the later disappearance of Anton and his computer cannot be deemed spoliation; (2) the missing evidence—evidence of Plaintiffs' actual

---

[1]Although the district court and both parties in their appeal briefs refer to "irreparable" prejudice, no party cites authority identifying this phrase as the articulation of an exclusive standard for assessing the propriety of sanctions in general or dismissal sanctions in particular. Prejudice, bad faith, and evidence of an effort to suppress the truth are all required to impose a sanction of dismissal based upon spoliation. Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1006–07 (8th Cir. 2006). The authority for such a sanction, however, ultimately lies with the court's inherent authority to redress conduct that *"abuses the judicial process*." Stevenson, 354 F.3d at 745 (emphasis added). Here, the district court directed its sanction toward a litany of conduct that it deemed abusive of the judicial process.

expenses—is immaterial to Plaintiffs' claims and therefore cannot support a finding of prejudice; (3) the missing evidence exists in other forms such that loss of the cited evidence cannot be deemed prejudicial; and (4) any dismissal sanction should apply only to certain claims.

Plaintiffs' claims regarding Defendants' termination of Anton's court-ordered deposition (at which Anton brought his computer) are without merit. A transcript of that deposition shows that Defendants suspended the deposition subject to resumption if Plaintiffs did not provide requested materials. Defendants subsequently requested certain materials, and Plaintiffs responded that most of those materials had been, or need not be, provided. This response was one of the issues that triggered Defendants' underlying motion for sanctions in this case. We do not interpret the transcript as demonstrating that Defendants' termination of the deposition was a rejection of the need for evidence from Anton. Further, during the deposition, Anton selectively revealed portions of his computer's contents, claiming portions not revealed related to other clients such that it was not clear what information he did and did not possess. Finally, during the deposition, Anton revealed that he possessed a payroll journal that Plaintiffs previously claimed did not exist.[2] The fact that Defendants may have had access to the computer at one point does not shield its later disappearance from claims of spoliation. This is especially true where Defendants' suspension of the deposition was contingent on receiving requested evidence and where the revelation of new evidence made it reasonable for Defendants to seek time to digest what had been revealed.

Collectively, Plaintiffs' remaining arguments reflect several mistaken views. First, Plaintiffs' arguments presume that Plaintiffs possess the unilateral ability to

---

[2]We question whether Defendants had actual "access" to the computer. Anton had his computer present but refused requests for anyone other than himself to look at the screen. Anton cited the reasons mentioned above as justification for his refusal to give access to the reports and source data on the computer.

dictate the scope of discovery based on their own view of the parties' respective theories of the case. Litigation in general and discovery in particular, however, are not one sided. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's claim or defense . . . .*") (emphasis added). Plaintiffs assert that liability and damages on the contract claims, for example, can be determined based solely on Defendants' historic expense data, actual payments to Plaintiffs, and Plaintiffs' argument about how Defendants should have calculated such payments. The contract language quoted above, however, appears on its face to empower Defendants to take many other things into consideration when determining expense payments. In fact, Defendants alleged in their answer that they adjusted expense payments in response to Plaintiffs' purported operating expenses. Further, in Plaintiffs' initial disclosures, Plaintiffs identified their own actual operating expenses as material when they described documents supporting their claims as follows: "Plaintiffs' financial records, including their records on the actual profit margin, revenues, and expenses for their operated stations during the term of the [operating] agreements." At that initial stage, then, Plaintiffs appear to have considered their own expense data to be material to the case. In any event, it matters not for the purpose of discovery which side's theory of the case might ultimately be proven correct. What matters is that each side is entitled to pursue intelligible theories of the case and Plaintiffs cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case.

Second, Plaintiffs suggest that discovery is limited to material that might be deemed relevant and admissible at trial. Discovery is not limited in this manner. Rather, discovery is a investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and, as this case well illustrates, the veracity of those persons and purported evidence, even if the evidence discovered is later deemed not admissible. WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011) ("Broad discovery is an

-11-

important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" (quoting Fed. R. Civ. P. 26(b)(1))).

Third, Plaintiffs appear to suggest that the concepts of materiality, relevancy, and discoverability are fixed rather than fluid such that parties cannot change their views of the necessity of certain information or their theories of the case during the course of discovery as new facts and relationships are revealed or explained. Relatedly, Plaintiffs' arguments presume that evidence once disclosed or made available may be destroyed as though discovery rather than trial is the point of litigation. Also, Plaintiffs fail to acknowledge that a district court's express finding that a plaintiff's principal is non-credible may bear upon our review of the issue of sanctions. Plaintiffs' arguments simply ignore the reality of a hotly contested case in which the perceived withholding of evidence and obfuscation of persons' roles can easily make litigants rethink their view of a situation or their need to review certain materials (when for example, it is later revealed that substantial undisclosed and hidden payments were made to an accountant who was not even initially identified as the accountant).[3]

_____

[3]As an example of how Plaintiffs' lack of candor and obfuscation make it particularly unfair to treat discovery goals and choices as fixed rather than fluid, we note the issue of store-level computers, as set forth in the parties' briefs. In Appellant's brief, Plaintiffs assert that they notified Defendants of the existence of site-level or store-level computers that contained certain financial data. Plaintiffs also assert that they notified Defendants of Plaintiffs' intent to sell the computers. Finally, Plaintiffs assert that Defendants had no interest in examining or purchasing the site-level computers and that, as such, Plaintiffs cannot have acted improperly by failing to preserve the site-level computers. To support these assertions and arguments, however, Plaintiffs cite to one page of deposition testimony from Barazi—a witness the district court expressly found to be not credible. Further, even if Barazi were credible, the cited page of testimony does not support the accompanying assertions Plaintiffs make in their brief. Finally, even if Barazi had been deemed credible and even if the cited testimony had stated what Plaintiffs claimed it stated, Plaintiffs'

Finally, Plaintiffs argue that it is an abuse of discretion for a district court to impose something other than the minimally punitive sanction available within the range of possible sanctions. It is not. See, e.g., Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992) (stating, albeit in the context of Fed. R. Civ. P. 37(b)(2), that, "When the facts show willfulness and bad faith, the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court."). Here, the district court concluded Defendants could not obtain a fair trial without the missing information. We find no error in this conclusion, as it remains unclear even today how various payments to Anton and others were related to site expenses, how these expenses related to Plaintiffs' profitability, and whether, when properly accounting for expenses, Plaintiffs did or did not earn the per-site profits suggested in contract documents. The district court properly determined that Defendants could not present their theory of the case without this information, and they certainly could not properly impeach Anton or properly test any information that passed through Anton's hands without access to Anton and the missing computer and without a full and honest explanation of what Plaintiffs and Barazi paid to Anton for what services.

III.    Conclusion

It is important to note in this opinion following remand that this case has been dismissed not once, but twice. In reversing the first dismissal we did not hold that dismissal was beyond the range of potentially applicable sanctions. Rather, our earlier panel held merely that one of the several bases that collectively supported the dismissal—the bribery issue—did not enjoy adequate support in the record as it existed at that time. In light of that determination, and in light of our abuse-of-discretion standard of review, we remanded for reconsideration and further

_____

ongoing obfuscation would have made it impossible for Defendants to know that such computers might become necessary in the case.

-13-

development rather than attempting to assess whether the other remaining bases for dismissal could justify dismissal in the absence of the bribery issue. We even ordered the case to be heard on remand by a different judge in light of the apparent anger the ongoing disputes and behavior had triggered in the district court. It is clear to this panel that, on remand, Plaintiffs and their principal did not take advantage of the generous second opportunity that our court provided. The continued lack of candor by Plaintiffs (as evidenced by, for example, the uncontested finding that Barazi was non-credible) demonstrates well why the harsh sanction of dismissal was permissible.

We affirm the judgment of the district court.[4]

_____

_____

[4]Appellee's pending motion to strike portions of Appellant's Reply Brief is denied as moot.