# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3039
_____

In re: Anne Elizabeth Clink

*Debtor*

------------------------------

Noel Bisges

*Appellant*

v.

Nancy J. Gargula, United States Trustee

*Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 8, 2014
Filed: October 21, 2014

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Noel Bisges appeals the decision of the district court[1] upholding the bankruptcy court's[2] denial of Bisges's motion to dismiss and the imposition of sanctions against him. We have jurisdiction under 28 U.S.C. § 158(d). We conclude that the bankruptcy court did not abuse its discretion in denying Bisges's motion or imposing sanctions, and we affirm the judgment.

## I. Background

Bisges represented Anne Clink in her Chapter 7 bankruptcy case. After the case was closed, United States Trustee Nancy Gargula moved to reopen the case because she learned that Clink possibly had failed to disclose in her bankruptcy petition that she owned horses. Clink explained that Bisges had told her not to disclose the horses. Clink paid the trustee $1,000 to settle the matter. Gargula then moved for disgorgement of fees paid to Bisges and sanctions under 11 U.S.C. §§ 105(a) and 526(c)(1).

Bisges moved to dismiss, as a spoliation sanction, Gargula's motion for disgorgement and sanctions because, he argued, Gargula had destroyed the only recording of Clink's meeting with her creditors that took place during her bankruptcy proceedings under 11 U.S.C. § 341. He asserted that his right to due process had been violated and that, "[o]ther than dismissal of the claims, there is no sanction that can cure the significant harm caused by the spoliation of this evidence."

The bankruptcy court noted that Gargula "knew or should have known that the recording was potentially relevant and should have been preserved." But because the

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

bankruptcy court found no evidence of bad faith by Gargula, it denied Bisges's motion and declined to sanction Gargula with dismissal of her motions. The bankruptcy court granted Gargula's motions and ordered Bisges to disgorge $1,411 in fees that Clink had paid him. The court also sanctioned Bisges under 11 U.S.C. § 105(a) for violating §§ 526(a)(2) and 707(b)(4) and referred him to the district court for violating a disciplinary rule.

The district court adopted the opinion of the bankruptcy court and upheld its findings of fact as not clearly erroneous, noting that Bisges had shown "a censurable disregard for the applicable legal rules and procedures" in his handling of Clink's bankruptcy case.

## II. Discussion

Bisges does not appeal the disgorgement of attorney's fees or his referral to the district court for violating a disciplinary rule. He appeals only the denial of his motion to dismiss and the sanctions that the bankruptcy court imposed.

As the second reviewing court, we review the bankruptcy court's decision and apply the same standard of review as the district court: Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 653 (8th Cir. 2008). Decisions to impose or deny sanctions are reviewed for abuse of discretion. In re Kujawa, 270 F.3d 578, 581 (8th Cir. 2001).

Bisges first argues that the bankruptcy court erroneously required a finding of bad faith to sanction Gargula for destroying evidence. But as we recently noted, "[p]rejudice, bad faith, and evidence of an effort to suppress the truth are all required to impose a sanction of dismissal based upon spoliation." Sentis Group, Inc. v. Shell Oil Co., 763 F.3d 919, 924 n.1 (8th Cir. 2014). The bankruptcy court concluded, though it did not make findings, that the record would not support an inference of bad

faith on the part of Gargula. Though he argued that he suffered prejudice, Bisges agreed with the bankruptcy court that there was insufficient evidence of bad faith by Gargula. Without that finding, sanctioning Gargula with dismissal of her motion would have been improper.

Bisges alternatively argues that the bankruptcy court should have considered lesser sanctions. But the bankruptcy court noted at the hearing on the motion to dismiss that Bisges had "disclaim[ed] any suggestion" that the bankruptcy court "should consider any lesser sanction." Bisges also had asserted in his memorandum in support of his motion to dismiss that "the only solution to the U.S. Trustee's spoliation of this important evidence is dismissal." Because Bisges has never before this appeal argued for lesser sanctions and instead expressly has declined to make the argument, he has waived it. See First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 478 (8th Cir. 1997).

Bisges next argues that the bankruptcy court improperly sanctioned him under 11 U.S.C. § 526(a)(2). Section 526(a)(2) instructs that a "debt relief agency" shall not:

> make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading[.]

Just before she filed for bankruptcy, Clink had written her mother a $3,000 check as part of a $5,000 repayment on a loan that Clink's mother had made to her. Bisges told Clink in an email that she should not send the check but that if she did, she should "make sure it cannot be traced & stick with the story, it [sic] did not happen." Bisges admitted during the hearing on Gargula's motion for sanctions that "out of frustration" he had advised Clink to lie about the payment. Clink paid her mother,

but because of Bisges's email, she immediately asked her mother to return it. Bisges argues that, although he told Clink not to disclose the loan in her bankruptcy petition, Clink never actually made a false statement "in a document filed in" her bankruptcy case. Thus, Bisges asserts, he did not violate § 526(a)(2).

Gargula points out that in the Statement of Financial Affairs attached to Clink's bankruptcy petition, Bisges checked a box signaling that no payment to creditors had been made within one year of the start of Clink's bankruptcy case, yet Clink's payment to her mother (a creditor) had occurred only weeks before the petition was filed. Also attached to Clink's petition was a Schedule F form, which requires disclosure of all unsecured, nonpriority creditors. Though Clink's mother qualified as such a creditor, based on the $5,000 loan she had made to her daughter, the Schedule F form does not list her. Those two documents, Gargula asserts, include intentionally fraudulent statements made during Clink's bankruptcy case, and because Bisges filed the petition on Clink's behalf, he violated § 526(a)(2). Gargula further argues that even without those documents, the statute's purpose is to punish lawyers who advise their clients to lie, regardless of whether the client takes the advice.

Bisges fails to cite any cases to support his proposition that an actual false or misleading statement is required to support sanctions under § 526(a)(2). He instead analogizes § 526 to 26 U.S.C. § 7206(2), a provision of the tax code that makes a felon anyone who "counsels[] or advises the preparation or presentation under . . . the internal revenue laws[] of a return" or other document that "is fraudulent or is false as to any material matter." We have ruled that § 7206(2) requires that a false return actually be prepared before the attorney may be sanctioned; he is not sanctionable merely by advising his client to lie. See United States v. McLain, 646 F.3d 599, 604–05 (8th Cir. 2011).

We think Gargula has the better argument. Section 526(a)(2) is violated when a debt-relief agency "counsel[s] or advise[s] any assisted person" to make a

fraudulent or misleading statement in a document in a bankruptcy case. The statute says nothing about whether the document containing that statement also must then be filed. Section 7206(2), however, punishes anyone who "counsels[] or advises *the preparation or presentation*" of a tax return or other document (emphasis added). In other words, § 7206(2) targets the improper counseling of the completed act (preparing or presenting a false return), whereas § 526(a)(2) targets making a false statement *or* advising an assisted person to make a false statement in a bankruptcy document.

The bankruptcy judge found that Bisges advised Clink to omit from her bankruptcy petition the payment to her mother. That Clink did not then file a document with the fraudulent omission is of no matter. Bisges admitted that he gave the advice, and that action expressly is prohibited by § 526(a)(2).

Bisges last argues that the bankruptcy court improperly sanctioned him under 11 U.S.C. § 707(b)(4). Sections 707(b)(4)(C) and (D) state that a signed petition, pleading, or motion certifies that the attorney has filed the document in good faith and that he "has no knowledge . . . that the information in the schedules filed with such petition is incorrect." Gargula alleged that Bisges violated this provision in at least two ways: by (1) failing to disclose in Clink's Schedule B, listing her personal property, that she owned horses, and (2) failing to obtain Clink's signature on the amended bankruptcy petition that Bisges filed with the court.

There was much testimony at the hearing about whether Bisges knew Clink still owned the horses. Clink testified that she had discussed her ownership of the horses with Bisges several times and that he had told her she did not need to list them because "no one lists horses." After completing a draft bankruptcy petition, Bisges asked Clink to review the petition and list any questions or errors. Clink reviewed the draft petition and faxed it back to Bisges. She testified that she had written "Animals?" on the draft petition because animals she owned, including the horses,

were not included on the draft Schedule B form attached to the draft petition. Bisges said that the fax he received from Clink did not have the hand-written notation, but he admitted that he knew Clink previously had owned horses. The final Schedule B attached to Clink's bankruptcy petition does not list the horses.

The bankruptcy judge credited Clink's testimony and determined that Bisges violated § 707(b)(4) by failing to list the horses on the Schedule B attached to Clink's bankruptcy petition. The bankruptcy court found that either Bisges knew of the horses and advised Clink not to list them, or he unreasonably failed to ask Clink about any animal ownership. Based on the testimony from the hearing, we cannot conclude that the bankruptcy judge's factual findings are clearly erroneous, and we could affirm the sanctions under § 707(b)(4) on that basis alone.

The bankruptcy court also concluded that Bisges violated § 707(b)(4)(C) by attaching to the bankruptcy petition schedules that significantly differed from the schedules that Clink had signed. Bisges admitted that he made some of the changes Clink had suggested on the draft petition, but he did not have her review and sign the petition filed with the bankruptcy court. Nor did he have her sign an amended petition he later filed that included different schedules listing new creditors and assets. So even if Bisges did not know that Clink still owned horses, the bankruptcy judge concluded, he admitted that he filed various documents without Clink's signature in violation of § 707(b)(4). Again, we see no clear error in the bankruptcy judge's findings, and we affirm the sanctions against Bisges under § 707(b)(4) on this basis, as well.

### III. Conclusion

Because there was no finding that Gargula destroyed evidence in bad faith, the bankruptcy judge did not abuse its discretion in denying Bisges's motion to dismiss. Nor did the bankruptcy judge erroneously conclude that Bisges was subject to

sanctions for his conduct during Clink's bankruptcy proceedings.  We thus affirm the judgment of the bankruptcy court.

_____