In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1102

DONALD L. MCDONALD,

*Plaintiff-Appellant*,

*v.*

MARCUS HARDY, Warden, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-02046 — **Joan B. Gottschall**, *Judge*.

SUBMITTED JANUARY 7, 2016[*] — DECIDED MAY 9, 2016

Before RIPPLE, WILLIAMS, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Donald McDonald was diagnosed
with arthritis and high cholesterol while serving a life sen-

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

tence at Stateville Correctional Center ("Stateville"), a maxi-mum-security prison in Illinois. Over the ten years following his diagnosis, he received a low-cholesterol diet planned by a dietician at the facility. In 2009, however, a new warden took the helm at Stateville, and he promptly discharged the dietician and cancelled all special diets, including Mr. McDonald's. The new warden also decreased the frequency of outdoor recreation for inmates to two days each week and altered the prison's job-assignment policy to restrict inmates from working in a particular job for more than one year.

As a result of these changes, Mr. McDonald brought this action under 42 U.S.C. § 1983 against Marcus Hardy, the new warden, Daryl Edwards, an assistant warden, and Salvador Godinez, then the director of the Illinois Department of Corrections.[1] Mr. McDonald claimed that Warden Hardy, with the support of Assistant Warden Edwards, had violated the Eighth Amendment's prohibition on cruel and unusual punishment by cancelling his prescribed low-cholesterol diet, decreasing his outdoor-recreation time, and changing the job-assignment system. Mr. McDonald also alleged that Director Godinez had violated the Equal Protection Clause by allowing inmates at the other maximum-security prisons in Illinois to have prescription diets and more time for outdoor recreation. Mr. McDonald sought both damages and injunctive relief.

---

[1] After this appeal was filed, Director Godinez retired from the Illinois Department of Corrections, and Warden Hardy accepted a different position within the Department. It is unclear whether Assistant Warden Edwards still works for the Department. For simplicity we refer to the three defendants by the titles they held at the times relevant to Mr. McDonald's complaint.

The district court granted the defendants' motion for summary judgment on each of Mr. McDonald's four claims. In this appeal, Mr. McDonald challenges the grant of summary judgment only as to his claims concerning the cancellation of his low-cholesterol diet, the limited time given for outdoor recreation, and the purported disparity of treatment of inmates at different Illinois maximum-security prisons. Mr. McDonald does not mention the district court's rejection of his claim about the new system for assigning prison jobs; that claim therefore has been abandoned. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 771 (7th Cir. 2015); *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

We conclude that Warden Hardy and Assistant Warden Edwards are not entitled to summary judgment on Mr. McDonald's claim concerning the cancellation of his prescription diet, and we remand that claim for further proceedings. In all other respects we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

Because the district court ruled in favor of the defendants at summary judgment, we view the following facts in the light most favorable to Mr. McDonald, the nonmoving party. *See Riker v. Lemmon*, 798 F.3d 546, 551 (7th Cir. 2015).

Mr. McDonald, who has been incarcerated at Stateville for twenty years, was diagnosed with high cholesterol in 1998. A

physician at the prison prescribed a low-cholesterol diet, along with cholesterol-lowering medication.[2] Mr. McDonald remained on that prescription diet until the end of 2009, when Warden Hardy took charge. Warden Hardy then fired Stateville's dietician and cancelled all medical diets. Since then, Mr. McDonald has eaten the regular diet at Stateville, which includes foods that the dietician had warned him to avoid, including cheese, eggs, and foods containing high amounts of mayonnaise.[3] Medical providers working at Stateville repeatedly have told Mr. McDonald that they cannot reinstate his prescription for a low-cholesterol diet because the cafeteria staff does not have the means to satisfy the prescription.

During a January 2014 deposition, Mr. McDonald acknowledged that his total cholesterol level had decreased at some point during the two years preceding the deposition, perhaps because doctors continued experimenting with different cholesterol medications.[4] Specifically, Mr. McDonald

---

[2] At summary judgment, Mr. McDonald submitted an excerpt from what he referred to as the American College of Physicians' "Complete Home Medical Guide," which supports his contentions that "changes in diet and exercise habits" typically are the first line of defense against high cholesterol and that medications are prescribed only if "these measures fail," on their own, at lowering total cholesterol to a safe level. R.50 at 7–8; R.51 at 11.

[3] The excerpt submitted by Mr. McDonald, *see supra* note 2, also asserts that "[a] high cholesterol level is associated with a diet that is high in fats, particularly saturated fats," R.51 at 10–11.

[4] Mr. McDonald is also litigating a separate lawsuit alleging that many of the medications doctors prescribed were ineffective at lowering his cholesterol and, in some instances, have caused harmful side effects. *See*

stated that his total cholesterol level had gone "down from 400" milligrams per deciliter ("mg/dL") to "around three."[5] That level, he added, was "still too high."[6] There is no evidence in the record, however, about Mr. McDonald's cholesterol level when his diet was cancelled four years before that deposition.

Mr. McDonald also has been diagnosed with arthritis, for which physicians have recommended exercises and sometimes prescribed pain medication. Stateville provides inmates with outdoor recreation twice each week for two and one-half hours each day, but Mr. McDonald alleges that this time is insufficient to provide therapeutic treatment for his arthritis. He also asserts that other maximum-security Illinois prisons provide "full yard," meaning "they have sometimes three and four times a day exercise programs where [inmates] might get three yards and a gym."[7]

---

*McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196, 2015 WL 3896929 (N.D. Ill. June 23, 2015) (denying defendants' motion for summary judgment).

[5] R.44-1 at 20 (11:18).

[6] *Id.* (11:19).

[7] *Id.* at 22 (21:5–8). Mr. McDonald purportedly learned this information from inmates incarcerated at Menard Correctional Center and Pontiac Correctional Center, the other maximum-security prisons in Illinois.

**B.  Earlier Proceedings**

Mr. McDonald brought this action in March 2013. He first alleged that Warden Hardy had violated the Eighth Amendment by "maintain[ing] and enforc[ing an] institutional policy denying Plaintiff a low cholesterol diet."[8] He also asserted that Warden Hardy was "the moving force behind the Policy of two (2) days of recreation, two hours each day," which, he said, caused him "to aggravate his medical conditions of high cholesterol, arth[ritis] and borderline diabetes."[9] Mr. McDonald next contended that Assistant Warden Edwards had violated the Eighth Amendment when he "failed to create programs that offered medical diets" and failed to provide sufficient time for outdoor recreation.[10] Finally, Mr. McDonald alleged that Director Godinez unconstitutionally discriminated against similarly situated Illinois inmates "by allowing Menard Correctional Center and Pontiac Correctional Center to provide special medical diets and yard or gym (exercise) more than two (2) times a we[e]k."[11] He sought damages against the individual defendants as well as "an injunction [r]equiring Stateville Correctional Center [to] provide [s]pecial diets for high cholesterol [and] diabetes, and an opportunity for plaintiff to exercise five (5) days a week."[12]

---

[8] R.1 at 8.

[9] *Id.* at 8–9.

[10] *Id.* at 9.

[11] *Id.* at 10.

[12] *Id.* at 12.

In August 2013, five months after Mr. McDonald brought this action, he requested various documents from the defendants, including a "complete copy" of his medical file at Stateville, policies and procedures concerning medical diets and opportunities for exercise at Stateville, and policies and procedures concerning opportunities for exercise throughout the Illinois Department of Corrections.[13] When the defendants failed to respond with all of the requested documents, Mr. McDonald twice asked the district court to compel production, and both times the court ordered the defendants to comply with Mr. McDonald's discovery requests.

Three months after the second order compelling discovery, and without complying with that order, the defendants moved for summary judgment. Warden Hardy and Assistant Warden Edwards did not dispute that Mr. McDonald had a medical prescription for a low-cholesterol diet when Warden Hardy arrived at Stateville in late 2009. Instead, these defendants simply asserted that "[n]o physician ha[d] prescribed a low cholesterol diet for Plaintiff *in the last several years*."[14] These defendants also did not dispute that Warden Hardy had given (and Assistant Warden Edwards had carried out) the order to cancel Mr. McDonald's prescription. Nor did they offer evidence that Warden Hardy had consulted Mr. McDonald's physicians (or any medical source) before cancelling Mr. McDonald's prescription diet. And these defendants did not offer a medical expert's opinion that Mr. McDonald's low-cholesterol diet was unnecessary or that cancelling it had not

---

[13] R.21 at 10.

[14] R.43 at 4 (emphasis added).

harmed him and had not placed him at a greater risk of suffering a heart attack or stroke.

Rather, the only relevant evidence submitted by any of the defendants was the transcript of Mr. McDonald's deposition. Warden Hardy and Assistant Warden Edwards—without producing any evidence showing what Mr. McDonald's cholesterol level had been before his diet was cancelled—asserted that Mr. McDonald did not have a valid claim because during his deposition he had acknowledged that his cholesterol level decreased from 400 mg/dL to 300 mg/dL in the two years preceding that January 2014 deposition. The defendants contended that this decrease established that Mr. McDonald's high cholesterol was being treated adequately "by physicians at Stateville with medication."[15] The defendants did not explain, though, how Mr. McDonald's claim could be defeated by evidence that his cholesterol level remained at least as high as 300 mg/dL two years or more after they had ended his diet. Mr. McDonald countered with medical literature (accepted by the district court without objection from the defendants) explaining that the optimal cholesterol range for someone of middle age is 115 mg/dL to 200 mg/dL. The defendants did not offer evidence, or even suggest, that a cholesterol level of either 300 mg/dL or 400 mg/dL is safe.

In granting summary judgment for the defendants on all claims, the district court first rejected Mr. McDonald's contention that the amount of outdoor recreation available to Stateville inmates is constitutionally deficient. The court reasoned that Mr. McDonald's evidence concerning his opportunities to exercise both in his cell and outdoors defeated his claim of an

---

[15] *Id.*

Eighth Amendment violation, particularly because Mr. McDonald had not presented evidence "that the limitation on his yard time adversely affected his cholesterol level or his arthritis."[16] The court then turned to the cancellation of Mr. McDonald's low-cholesterol diet. In rejecting that claim, the court asserted that Mr. McDonald lacked "evidence showing that a doctor has prescribed him a low cholesterol diet or that the lack of such a diet has hindered his ability to control his cholesterol levels."[17] Mr. McDonald simply disagreed, the court reasoned, with the medical treatment provided by doctors at Stateville. And, the court emphasized, because the defendants are not physicians, they are permitted to "reasonably rely on the judgment of medical professionals regarding the care provided to an inmate."[18] Finally, the court concluded that Director Godinez was entitled to summary judgment on Mr. McDonald's equal protection claim; Director Godinez's decisions concerning inmates at different prisons in Illinois are presumed to be rational, the court explained, and Mr. McDonald's "belief" that Stateville inmates are unfairly allowed less time for recreation and deprived of prescription diets was insufficient to overcome that presumption.[19]

---

[16] R.55 at 7.

[17] *Id.* at 10.

[18] *Id.* at 11.

[19] *Id.* at 12.

## II

## DISCUSSION

We review the district court's decision granting summary judgment de novo. *Riker*, 798 F.3d at 551. Summary judgment is appropriate only if, construing the record in the light most favorable to the party opposing summary judgment, no jury could reasonably find in favor of that party. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016).

### A. Eighth Amendment Claim Based on Cancellation of Low-Cholesterol Diet

Mr. McDonald submits that the district court improperly granted summary judgment on his claim that Warden Hardy and Assistant Warden Edwards displayed deliberate indifference to his high cholesterol by cancelling his prescription diet.

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, requires that inmates receive adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). However, an inmate claiming a violation of the Eighth Amendment must do more than show negligence, medical malpractice, or disagreement with a pre-scribed course of treatment; the inmate must demonstrate that prison staff was deliberately indifferent to an objectively seri-ous medical condition. *See Pyles*, 771 F.3d at 409; *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).[20] Where, as here, an

---

[20] *See also Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990).

inmate sues prison employees who are not part of the medical staff, deliberate indifference can be shown with evidence that those employees ignored or interfered with a course of treatment prescribed by a physician. *See Estelle*, 429 U.S. at 104–05 (explaining that deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" (footnotes omitted)).[21]

An objectively serious medical condition is one that "a physician has diagnosed as needing treatment" or that is so obviously serious "that even a lay person would easily recognize the necessity for a doctor's attention." *Knight*, 590 F.3d at 463 (internal quotation marks omitted).[22] Prisoners typically point to acute problems that, because of inadequate treatment, already have caused or aggravated pain or other harm. *See, e.g.*, *Conley v. Birch*, 796 F.3d 742, 744–45, 747 (7th Cir. 2015) (fractured hand); *Perez v. Fenoglio*, 792 F.3d 768, 774, 776 (7th Cir. 2015) (torn ligament in hand, dislocated thumb, tissue damage, and open wound).[23] No less objectively serious,

---

[21] *See also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828–29 (7th Cir. 2009); *Chapman v. Keltner*, 241 F.3d 842, 845–46 (7th Cir. 2001); *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013).

[22] *See also Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007).

[23] *See also Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (shotgun wound); *Rodriguez*, 577 F.3d at 830 (incorrect insertion of IV needle); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (nasal fracture); *Edwards*, 478 F.3d at 831 (dislocated and fractured finger); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (burns).

though, are chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions unless adequately treated. For example, high cholesterol, known as "the silent killer," can progress over an extended period of time without apparent side effects before eventually reaching a crisis point and causing potentially deadly health problems, including heart attacks and strokes.[24] Custodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries. *See Miller v. Campanella*, 794 F.3d 878, 878, 880 (7th Cir. 2015) (gastroesophageal reflux disease); *Ortiz v. City of Chicago*, 656 F.3d 523, 526, 533 (7th Cir. 2011) (diabetes, thyroid condition, hypertension, and asthma); *Roe v. Elyea*, 631 F.3d 843, 861–62 (7th Cir. 2011) (hepatitis C); *Gayton v. McCoy*, 593 F.3d 610, 620–21 (7th Cir. 2010) (congestive heart failure); *Greeno v. Daley*, 414 F.3d 645, 648, 653 (7th Cir. 2005) (severe heartburn and frequent vomiting); *Reed v. McBride*, 178 F.3d 849, 851, 853 (7th Cir. 1999) (paralysis, heart disease, Hunt's syndrome, high blood pressure, rheumatoid arthritis, and "other crippling diseases").[25] Indeed, it is precisely the latent

---

[24] *See High Cholesterol: The Silent Killer*, HEALTH CENT. (Mar. 23, 2011), http://www.healthcentral.com/cholesterol/c/684890/134294/cholesterol/; *High Cholesterol Overview*, MAYO CLINIC (Feb. 9, 2016), http://www.mayo-clinic.org/diseases-conditions/high-blood-cholesterol/home/ovc-20181871.

[25] *See also Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 487–88, 498 (1st Cir. 2011) (HIV); *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) (hepatitis C); *Hunt v. Uphoff*, 199 F.3d 1220, 1222–24 (10th Cir. 1999) (hypertension and

and incremental nature of the harms associated with such conditions that makes the provision of adequate medical care so important.[26]

With that in mind, we turn to the merits of Mr. McDonald's claim of deliberate indifference. We first note that the hurdles Mr. McDonald encountered in developing evidence to flesh out this claim are troubling, particularly with respect to essential medical records. Twice the district court had to direct the defendants to comply with Mr. McDonald's discovery requests, yet Mr. McDonald informs us that the defendants never fully complied with the court's orders. The defendants do not deny this accusation or explain their conduct. Instead, they insist that, "other than his two motions to compel," Mr. McDonald "identifies nothing in the record to show that he brought any of the…claimed discovery 'violations' to the attention of the district court."[27] The defendants add that

diabetes); *Rouse v. Plantier*, 182 F.3d 192, 195, 198–99 (3d Cir. 1999) (diabetes); *Aswegan v. Bruhl*, 965 F.2d 676, 677 (8th Cir. 1992) (coronary artery disease, chronic obstructive pulmonary disease, and arthritis); *McCarthy v. Weinberg*, 753 F.2d 836, 836–37 (10th Cir. 1985) (multiple sclerosis); *cf. Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that inmate can state claim of deliberate indifference by alleging "unreasonable risk of serious damage to his *future health*" (emphasis added)).

[26] Adequate treatment of chronic conditions is a serious concern in correctional institutions, where, at least one study has shown, there is a significantly higher prevalence of hypertension, asthma, arthritis, cervical cancer, and hepatitis. Ingrid A. Bingswanger, *Chronic Medical Diseases Among Jail and Prison Inmates*, CORRECTIONS.COM (Oct. 25, 2010), http://www.corrections.com/news/article/26014-chronic-medical-diseases-among-jail-and-prison-inmates.

[27] Appellees' Br. 28. This assertion is puzzling; by filing two motions complaining of inadequate responses to his discovery requests, Mr. McDonald

Mr. McDonald "does not explain how not having the particular documents he complains Defendants never produced— e.g., his medical records showing that he had been prescribed a low-cholesterol diet years ago and the prior policy of seven hours of recreation per week—prejudiced him in any way on summary judgment."[28] Finally, the defendants point out that Mr. McDonald did not ask for additional time to complete discovery or submit an affidavit swearing that he could not adequately oppose summary judgment without the documents. *See* FED. R. CIV. P. 56(d); *First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 693–94 (7th Cir. 2004). Litigants, however, cannot ignore legitimate discovery requests based on a unilateral belief that flouting the rules of procedure will not harm their opponents,[29] and continued intransigence after the district court has *compelled* compliance is inexcusable.[30]

In any event, what little evidence Warden Hardy and Assistant Warden Edwards did submit in opposing Mr. McDonald's claim about his prescription diet actually supports, rather than defeats, that claim, and thus we must overturn the grant of summary judgment regardless whether the docu-

---

*did* bring the alleged discovery violations to the attention of the district court.

[28] *Id.* at 28–29.

[29] *See Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014); *Farm Constr. Servs., Inc. v. Fudge*, 831 F.2d 18, 20–21 (1st Cir. 1987).

[30] *See Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 723–24 (7th Cir. 2008); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1254–55 (7th Cir. 1995); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905–06 (9th Cir. 2002).

ments withheld by the defendants were material. The evidence is undisputed that when Warden Hardy arrived at Stateville in late 2009 he cancelled (and Assistant Warden Edwards refused to reinstate) all prescription diets, including Mr. McDonald's. These defendants, however, are not physicians, and there is no evidence in the record that they ever consulted a medical professional about the advisability of cancelling the allowance for low-cholesterol diets at the prison. Interference with prescribed treatment is a well-recognized example of how nonmedical prison personnel can display deliberate indifference to inmates' medical conditions. *See Estelle*, 429 U.S. at 104–05; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828–29 (7th Cir. 2009).[31]

Warden Hardy and Assistant Warden Edwards fall back on their contention that nothing was taken away from Mr. McDonald because he "presented no evidence that a medical professional has prescribed a low-cholesterol diet for him."[32] First, we note the obvious conflict that this statement presents with the defendants' assertion *in the same brief* that full compliance with Mr. McDonald's discovery requests, which included requests for medical records proving the existence of the prescription, would not have changed the result at summary judgment. In any event, this characterization of the evidence at summary judgment is wrong: Mr. McDonald testified at his deposition that he was given a prescription diet when he was diagnosed with high cholesterol and that he was still receiving that low-cholesterol diet when Warden Hardy

---

[31] *See also Chapman*, 241 F.3d at 845–46; *Williams v. Ramos*, 71 F.3d 1246, 1250 (7th Cir. 1995); *Burgess*, 735 F.3d at 476.

[32] Appellees' Br. 18.

took it away. The defendants did not introduce evidence that prescription diets expire or must be renewed periodically, nor did they introduce evidence that an inmate could have been receiving a nonstandard, low-cholesterol diet without a prescription. Rather, their statement of uncontested facts at summary judgment stated only that Mr. McDonald had not been prescribed a low-cholesterol diet "in the last several years,"[33] i.e., since Warden Hardy fired the prison dietician. But this fact does not help the defendants. That Mr. McDonald was not given a prescription *after* Warden Hardy took over is not evidence that a prescription was medically unnecessary; in fact, the absence of a prescription after Warden Hardy's arrival is the very reason for Mr. McDonald's lawsuit. No physician would give him a prescription, he explained at his deposition, because after Warden Hardy's arrival four years earlier a prescription for a low-cholesterol diet would have been ignored by the cafeteria staff.

Warden Hardy and Assistant Warden Edwards next point to the medical treatment for high cholesterol that Mr. McDonald had been receiving—a variety of prescription medicines—and contend that this claim of deliberate indifference amounts to nothing more than Mr. McDonald's disagreement with the medical staff's chosen course of treatment. Despite the fact that eliminating Mr. McDonald's prescription diet *was not* the medical staff's choice, the district court was persuaded by the defendants' reasoning. At his deposition, however, Mr. McDonald testified that medication alone was ineffective at lowering his cholesterol to a safe level. A level of 300 mg/dL

---

[33] R.44 at 2.

is "too high," he stated.[34] The defendants did not submit any evidence challenging that statement.[35] A jury reasonably could find that Warden Hardy and Assistant Warden Edwards were deliberately indifferent to Mr. McDonald's condition when they ignored his pleas to honor the medical staff's inclusion of a low-cholesterol diet in his treatment plan. *See Smego v. Mitchell*, 723 F.3d 752, 758 (7th Cir. 2013) (explaining that "[a] physician is deliberately indifferent when he persists in an ineffective treatment").[36] Moreover, Mr. McDonald introduced evidence, again without contradiction, that a combination of medication, a low-cholesterol diet, and exercise is the medically accepted method of lowering high cholesterol.

Warden Hardy and Assistant Warden Edwards touch on, but have not developed, an argument concerning causation. *See Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015) (explaining that plaintiff alleging constitutional tort must

---

[34] R.44-1 at 20 (11:19).

[35] Indeed, it is apparent after browsing readily available sources targeted at lay persons that a total cholesterol level above 240 mg/dL is high. *See High Blood Cholesterol Levels In-Depth Report*, N.Y. TIMES, http://www.ny-times.com/health/guides/disease/high-blood-cholesterol-and-triglycer-ides/print.html (last visited Apr. 20, 2016); *High Cholesterol*, U.S. DEP'T OF VETERANS AFFAIRS, NAT'L CTR. FOR HEALTH PROMOTION & DISEASE PREVENTION (April 2009), http://www.ahrq.gov/sites/default/files/wysiwyg/patients-consumers/prevention/disease/cholpatient.pdf; *Know the Facts About High Cholesterol*, CTRS. FOR DISEASE CONTROL & PREVENTION 1, http://www.cdc.gov/cholesterol/docs/ConsumerEd_Cholesterol.pdf (last visited Apr. 20, 2016).

[36] *See also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (same); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (same); *Kelley*, 899 F.2d at 616–17 (same).

show that defendant caused injury); *Roe*, 631 F.3d at 863–64. In their summary judgment motion, the defendants stated only that Mr. McDonald "can provide no evidence that his cholesterol level has been affected by not having a low cholesterol diet."[37] However, given the diagnosis of a serious medical condition and the interference by Warden Hardy and Assistant Warden Edwards with a physician's assessment that a low-cholesterol diet was necessary in treating that condition, a jury reasonably could infer that Mr. McDonald was, and continues to be, harmed by the lack of a low-cholesterol diet. *See Gayton*, 593 F.3d at 624–25 (concluding that jury could infer causation from evidence of serious medical condition and requests for treatment that were ignored); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (explaining that jury could infer that delay in providing treatment caused harm). The defendants made no effort to establish that Mr. McDonald's level of total cholesterol remained steady after his prescription diet was taken away. Nor did they offer an expert's opinion that Mr. McDonald could not have been harmed by the defendants' actions.[38] Accordingly, we must return this claim to the district court for further proceedings.

---

[37] R.43 at 4.

[38] We note that evidence in the public record of a separate lawsuit, *McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196 (N.D. Ill.), supports Mr. McDonald's contention that he *has* been harmed by the defendants' actions. According to a medical report submitted in response to the defendants' motion for summary judgment in that lawsuit, Mr. McDonald has been diagnosed with atherosclerosis of the aorta, a "hardening and narrowing of the arteries" that can be caused by high cholesterol and "is the usual cause of heart attacks, strokes, and peripheral vascular disease," *What Is Atherosclerosis*, WEBMD (May 26, 2014), http://www.webmd.com/heart-disease/what-is-atherosclerosis.

## B. Eighth Amendment Claim Based on Outdoor Recreation

Mr. McDonald contends that the court erroneously granted summary judgment to Warden Hardy and Assistant Warden Edwards on his claim that the five hours they allow for outdoor recreation each week is constitutionally deficient. In contrast with the claim about his low-cholesterol diet, however, Mr. McDonald presented no evidence that a physician had specified a minimum level of outdoor recreation to treat either his arthritis or high cholesterol. *See Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) (explaining that Eighth Amendment does not give inmates right to dictate course of treatment); *Forbes v. Edgar*, 112 F.3d 262, 266–67 (7th Cir. 1997) (same). These defendants therefore are entitled to summary judgment on this claim.

## C. Equal Protection Claim

Mr. McDonald additionally argues that the district court improperly granted summary judgment on his claim that Director Godinez, the former director of the Illinois Department of Corrections, discriminated against Stateville inmates in violation of the Equal Protection Clause by denying them medical diets and greater opportunities for outdoor recreation, both of which, he says, are available at the other two maximum-security prisons in Illinois. Mr. McDonald, however, admitted during his deposition that he lacks personal

knowledge of the conditions at the state's other maximum-security prisons, which dooms his claim at summary judgment.[39]

## D. Remaining Issues

Three other matters remain. First, because Mr. McDonald seeks injunctive relief on his claim that Warden Hardy interfered with his prescribed diet, the district court on remand should add as a defendant, in his official capacity, the current warden of Stateville.

Second, we note that Mr. McDonald currently has pending before the same district judge a second, related lawsuit claiming that Wexford Health Sources (a company that contracts with Illinois to provide medical care to its prisoners), along with its employees, was deliberately indifferent to his high cholesterol by prescribing ineffective and harmful medications. *McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196 (N.D. Ill.). In that second suit the district court recruited counsel for Mr. McDonald. That lawyer retained a medical expert, and the district court recently denied the defendants' motion for summary judgment. Because the legal issues and facts overlap significantly, the district court on remand should consider consolidating the two lawsuits and requesting that counsel also represent Mr. McDonald in this one. *See* FED. R. CIV. P. 42(a)(2) (allowing district court to consolidate actions that "involve a common question of law or fact"); *Blair v.*

---

[39] *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 912 (7th Cir. 2002); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

*Equifax Check Servs., Inc.*, 181 F.3d 832, 839 (7th Cir. 1999) (explaining that consolidation is "[b]y far the best means of avoiding wasteful overlap when related suits are pending in the same court").

Finally, on remand the district court should resolve Mr. McDonald's assertion that the defendants have stonewalled his discovery demands despite two orders from the court directing compliance.

## Conclusion

The district court erred in granting the defendants' motion for summary judgment on Mr. McDonald's claim that Warden Hardy and Assistant Warden Edwards displayed deliberate indifference to his high cholesterol by cancelling and refusing to reinstate his low-cholesterol diet. Accordingly, we vacate the grant of summary judgment on that claim, and we remand that claim for further proceedings. In all other respects we affirm the district court's judgment.

AFFIRMED in part, REVERSED and

REMANDED in part